HARRISON ROBBINS, administrator &c., appellant,

*v.*

MARY ANN MYLIN et al., respondents.

The claims of certain creditors of a decedent to share the proceeds of the sale of his lands to pay debts, were rejected, because they were not presented under oath. An order was made, distributing to the widow and children the surplus remaining after the payment of the debts which had been regularly proved. Afterwards, a suit in chancery was begun by some of the creditors whose claims had been rejected, and the administrator enjoined from paying over the surplus to the widow and children. The chancery suit was subsequently compromised by the widow, on her own behalf, and as the guardian of the children, agreeing to the payment of part of the creditor's claims out of the surplus, and a release therefor was given to the administrator. On a petition by the widow to the orphans court for an order to compel the administrator to comply with the original order of distribution of the surplus— *Held,* that the release was conclusive on the orphans court, and the widow estopped thereby.

Appeal from order of Camden orphans court.

*Mr. P. L. Voorhees,* for appellant.

*Mr. J. T. Woodhull,* for respondents.

THE ORDINARY.

Letters of administration of the estate of Amos K. Mylin deceased, were granted by the surrogate of Camden county to the appellant and John H. Mylin, March 13th, 1871. An order to limit creditors was taken on the same day, and another barring creditors who had not put in their claims within the limited period, was made on the 4th of March, 1872. On the 13th of May following, a decree was made that the administrators proceed as if the estate were insolvent, and make sale of all the real estate. By that decree the court struck out of the list of

claims presented within the limited time those of Budd Doble, Fitzwater & Reily, Thomas Bond, James Newcomb and Henry V. Leslie, respectively, on the ground that they had not been put in under oath or affirmation. They amounted, in the aggregate, to $1,045.44. The land having been sold, the administrators filed their final account, which was settled January 17th, 1873. There was a balance, after paying all the debts which had been allowed, and the expenses of the administration, of $1,651.95. This the court, by the order allowing the account, ordered to be distributed according to law. On the 18th of February, 1874, the court made a specific order of distribution, directing that $550.65 of the balance be put at interest for the use of the widow of the intestate for life; the principal, at her death, to be distributed among his nine children; and that the sum of $1,101.30, being the remainder of the $1,651.95, after deducting the amount set apart for the widow, be equally divided among the children. On or about the 11th of July, 1878, the widow and children filed their petition in the orphans court, sworn to by the widow and the adult children (the widow was guardian of the minors), stating that the greater part of the business of the estate had been done by Robbins, and that he had the custody of the $1,651.95; that he had wholly refused and neglected to carry out the order of distribution, notwithstanding repeated and urgent requests, until April 19th, 1878, and he then did not carry it out completely, but only made partial distribution; that on or about the last-mentioned date, he, in answer to repeated demands, at length tardily consented to distribute, not the whole, but only the half of the money ordered to be distributed; that he, in fact, on that day paid to the widow only the sum of $825.97½, and to the heirs only one-half of the sum to which they were justly entitled; that since that date he had not paid any of the money which then, and at the filing of the petition, remained in his hands subject to the order of the court, and they prayed the court to compel the administrators to complete the distribution according to the order therefor, or show cause why they should not pay to the petitioners $825.97½, with interest and costs. An order to show cause was granted July 13th, 1878.

Robbins *v.* Mylin.

Under it, testimony was taken, and on the 29th of January, 1881, the court decreed that Harrison Robbins, one of the administrators, should, within fifteen days from the service of a copy of that decree on him, " pay the sum of $1,651.95, with interest compounded by annual rests, from January 17th, 1873, to the date of the payment of $825.95 on the 19th of April, 1878, and with interest compounded on the balance from the date of that payment to the date of the decree, viz., $1,807.24, with costs to be taxed," to the complainants or their proctor, and that if he fail to do so, an attachment be issued against him for contempt.  From that decree Robbins appealed to this court.

It appears that on the 2d of March, 1874, a few days after the order of distribution was made (which was February 18th, 1874), an attorney at law of Camden wrote to Robbins, informing him that Doble and Fitzwater had placed their claims against the estate of the intestate in his hands, and intimating an intention to have recourse to litigation, if necessary, to collect them.  On the 26th of February, 1878, a bill was filed in the court of chancery by the persons whose claims had been disallowed, and others whose claims had not been put in, against the administrators and the widow and children of the intestate, the object of which was to obtain the application of the balance ordered to be distributed to the payment of their debts, together amounting, according to the statements of the bill, to about $2,300.  The complainants alleged that the fact that their claims were not put in as required by law was attributable to the negligence of their attorney.  On the filing of the bill, an order to show cause why an injunction should not be issued according to the prayer of the bill, was granted.  It appears that the suit was no further proceeded in, because a settlement was made between the counsel of the widow and children and the counsel of the complainants.  By that settlement it was agreed that the widow and children should receive $925.95 of the money ordered to be distributed, $100 of the amount to be paid to their counsel as his fee in a suit at law brought by one of the children against the administrators to recover its distributive share, and the complainants to have the rest.  The settlement was carried

out, and the $825.95 paid to the widow and children, and the
$100 to their counsel.   On making the payment to the former,
a release under seal was given, signed by the widow and adult
children, and by the former as guardian of the minors.   It, in
consideration of the $925.95, released the administrators from
all further responsibility or liability whatever as administrators,
and they were thereby declared to be released and forever dis-
charged by the widow, for herself and as guardian of the minors,
and by the other heirs, from all claims or liabilities as adminis-
trators, in favor of the guardian or heirs at law.   It is dated
March 10th, 1878 ; it was not delivered, however, until April
19th, 1878, when the $829.95 were paid.   When that payment
was made, the widow gave a receipt, acknowledging the receipt
thereof in full for the distributive share of her children and her-
self.   The receipt stated that she was authorized to receive the
shares of the children, adults as well as minors.

The orphans court, by its action in ordering the appellant to
pay the widow and children the money which, in the settlement,
it had been agreed should go to those who claimed as creditors,
in effect undertook to set aside the release, presumably for fraud.
The release was a conclusive answer in that court to the claim
made by the petition.   The orphans court had no jurisdiction to
set it aside.   The petitioners mistook the form in which the re-
lief which they sought was to be obtained.   The petition made
no mention of the settlement nor any reference to it, and therefore,
while, on the petition, the court properly made the order to show
cause, yet when the administrators proved the release it was its
duty to discharge the order.   The order appealed from will be
reversed, with costs,